Morning, we will dispense with the calling of the calendar and we'll hear the first case, Stillwater. Good morning, Your Honor. As it may please the Court, David Goroff for Stillwater Liquidating, which I will call Stillwater. Your Honor, this Court's precedent in colonial realty has three important holdings for this appeal. First, the Court there underscored the vital importance of the automatic stay to an orderly bankruptcy, noting that it is so central to an orderly bankruptcy process that actions taken in violation of the stay are void and without effect. Second, the Court held that for purposes of stay section 362A.3, fraudulently transferred property is not property of the estate, because until that time it is outside of the estate. And finally, this Court held that irrespective of whether property is fraudulently transferred, the stay applies under section 362A.1 as an action to recover a claim against the debtor. And in colonial realty, the Court noted that a third-party action to recover fraudulently transferred property is properly regarded as undertaken to recover a claim against the debtor and subject to the automatic stay pursuant to 362A.1, a holding that was reiterated by this Court in the Picard decision in 2014. And so, Your Honors, if I may? Roberts. What was the debtor's property interest at the time of the foreclosure? Yeah. At the time of the foreclosure, the debtor held a 40 percent beneficial ownership interest in the lien that existed on the Hillendale property. And that lien had been converted, but at the very least it had been fraudulently transferred, from Stillwater to Jerova and then through a series of successor entities, and was held at the time of the foreclosure by SFN by an entity called Camden Real Estate Opportunity Fund, which was the successor. But the debtor had no interest in any actual property. Well, a lien interest is an interest in property. You cannot sell the underlying. You can't live on it. You can only foreclose on it. You can't. A lien interest is a cloud on title. It's not part of an ownership right. But a lien interest has been recognized by this Court in the Fidelity case in 1975 and by a number of other cases as being a kind of property for purposes of Section 541 of the Code, which defines property of the estate. It is an interest in property, which is all that the Code requires. The liens extinguishment resulted because there was a higher lien granted to the municipalities for the failure to make payment, and that lien subject to extinguishment suffered and independent of any fraudulent transfer, isn't it? Well, it's – Presume no transfer had occurred. Right. If no – Presume no transfer had occurred. Right. And Hill and Dale Properties didn't pay the taxes on the property. And a tax lien foreclosure occurred, and $226,000 was bid at the tax lien foreclosure. And you're there, and you don't bid. Right. What happens? At that – Your lien is extinguished. That's correct. If you own a lien. Right. And so therefore, what's the point? Well, that's earlier in the process, Your Honor. What happened was the tax liens vested property in an entity called FTDD-3. Sure, but that has nothing to do with Gerova. That's separate and independent. It all runs with the property because of the failure to make payment of taxes. So that whole string of liens and the ultimate extinguishment of any lien interest that you may have, I'm not so certain you do have one. But in any event, the extinguishment of that is separate and independent of any fraudulent conveyance, isn't it? No, Your Honor. That's actually not the fact. So the tax lien was in 2009, and at that point it was redeemed by Ponce, which then deeded back the property. EHM, is that right? Correct. Right. And ultimately back to Top Flight. So Top Flight, which was the borrower under the loan, regains control of the property. In the meantime, Ponce acquires the debt under a mechanics lien owed by O2 erosion control, and then for reasons we don't know, even though it's... There's something crazy going on there because the property's fluctuating in value and everything else, but I still don't understand. How does this... I mean, your complaint is with Gerova because at a closing, you never got... I don't know who the willer was that closed the steel, but $540 million of stock that you never got. Well, Your Honor... As the bankruptcy judge said, someone was asleep at the closing. But, Your Honor, that's actually not a description of what happened at the Gerova transfer either. First of all... Well, let... If I may... You've got a conversion claim, or you claim you think you have a conversion claim against Gerova, correct? Correct. We've always made that claim, Your Honor. How does that get you back your property, your property interest in Hillendale? Because, well, we have, to the extent you accept... What does Gerova have to do with Top Flight? Gerova has a lien on Top Flight. Top Flight is the owner of the property subject to Gerova's lien when it first takes over because it succeeds to two things. It succeeds to the onshore funds piece, and the onshore fund has a piece it owns itself and has a 40% piece it owns, only in legal title as trustee. The beneficial owner of that is the debtor. And so, Your Honor, there was... I'm still perplexed. I'm back several stages. Yes. Your complaint alleges substantially all the Stillwater assets were fraudulently transferred to Gerova. Correct. There was a transfer that occurred at that point. Stillwater was not left with anything other than a claim against Gerova, from what I can see, for failure to pay the consideration it had promised. I don't understand how any equitable interest or lien sufficient to trigger the involvement of the stay or the automatic stay provisions has any bearing on this. There was a transfer. It's done. You have a breach of contract action. What am I missing? Well, first of all, it wasn't... It was a conversion, Your Honor, or at the very least... It was a conversion in that you didn't get what you were promised in the contract. No. We think it was plotted and we've alleged at all times, if you look at Joint Appendix 1735, paragraph 4 of the original complaint, we say that these assets were converted, leaving Stillwater funds with no assets and no consideration. Yes. And the... You claim that there was a transfer that occurred and you're now characterizing that as conversion, that there was a transfer that occurred and consideration was promised and wasn't paid. And now you're characterizing that as conversion. Your Honor, that is... We are not now doing that. We have at all times pleaded in the alternative. And actually remember, when you have an agent that breaches its fiduciary duty, that effectively is authorized to do one thing, which is do a deal as papered for immediate assumption of debts, which never happens, and the takeover of, you know, $385 million of first preferred stock, which is never issued, and then turning that into tradable stock 6 months later, which never happens and never was intended to happen. What if you had gotten the stock? What if you had gotten the stock and Jerova and Hill & Dale, again, defaults on its taxes and Jerova doesn't go to the tax sale or Jerova goes to the tax sale and makes a decision that it's not going to bid on the property? What do you have then? You lose your interest in the property, right? That's true. But, Your Honor, this wasn't the tax sale. But that just shows you how extenuated this is from your claims with Jerova. I mean, this is some form of participatory interest in a lien on a piece of property that you want to stop a tax lien foreclosure of a superior lien. That's what you sought. You sought a stay of the tax foreclosure, did you not? It was not a tax foreclosure, Your Honor. It was a foreclosure based on the interest in a material man's mechanics lien. The tax foreclosure had happened earlier in the process. I think he disagrees with you. He may. But the tax foreclosure was a 2009 event. And what Ponce succeeded to was was it a lien superior to yours? I believe a mechanics lien would be superior. Okay. So then I don't care what it was. But it doesn't. If it's superior to yours, I don't see how you stop it. Because the automatic stay doesn't ask if it's superior. Then any bank which went bankrupt and there were foreclosures occurring because of more superior liens against properties on which that bank held secondary liens, that bank would then be able in bankruptcy court to seek stays with regard to every single foreclosure in which it was in a junior position? Your Honor, there's multiple cases where, for example, Cardinal Industries, which we cite, were a junior. That's not a foreclosure case. It was a declaratory judgment about whether the extinction of a second mortgage lien would violate the automatic stay and it held that it would. So it speaks to foreclosure, Your Honor. All right. Go ahead. I believe I'm running into You have three minutes for rebuttal. Right. We'll hear from the other side. Thank you very much, Your Honor. Thank you. May it please the Court. My name is David Fives and I represent the Appley SFN. I think we shouldn't lose sight of who these parties are. The debtor is a Cayman Island fund that lends to the Delaware fund, which is an onshore fund, and the arrangement between the two is to keep that fund, the debtor, secret. All the rights and title in these liens are in the onshore fund and they only have this beneficial interest. Now, the onshore fund decides to sell its assets to Jerova, but before that, they had a foreclosure of their lien and they stopped it. We don't know why they stopped it. So the entity, the onshore fund, which the debtor delegated all responsibility to manage this lien onshore, didn't foreclose. Next thing we know is that there is this 85-page agreement where there's an asset purchase. These are sophisticated investors. They decide to monetize their assets by agreeing to take convertible stock in Jerova six months hence. They do this deal. They would like this to be a conversion, but at the time, Jerova got lawful possession of these assets and therefore it's... Your adversary is claiming, though, that an intent was formed before the deal was that this allowed for an easy transfer, but really this was part of a scheme all along basically to defraud them of this valuable asset. Why isn't that a legitimate way of pleading in the alternative here? It's not a conversion, Your Honor. That would not be a conversion because at the moment of transferring a possession of those intangible assets, i.e., these loans and mortgages, they were lawful. They would have a claim of fraudulent conveyance to recover them. I would concede maybe that transfer is voidable, but until it is voided, until it's determined that there was fraud in the inducement, it's not void. There is a valid transfer. But I think he's saying that because there was an intent never to pay any consideration that the fact that there was a paper transfer doesn't mean anything. We should overlook that and it's the same as a theft. I disagree with that. What he's saying is there was an intent at the time to breach an agreement to give stock six months hence that would be convertible. And if the claim is that at the time you had that agreement, they never intended to perform, that's a breach of contract or... Does it matter whether, assuming it was a conversion, does it matter? I don't believe so. And the reason it... I'm sorry, Your Honor? Tell us why you say that. Because he is a beneficiary of this alleged trust that the Delaware Fund was the trustee. If those assets were indeed transferred or converted, he doesn't, as the beneficiary, and I don't believe he addresses this in his brief, as the beneficiary of the trust, he doesn't have legal title. He doesn't have the right to come in and recover those assets. The Delaware Fund, which is the trustee, who'd never filed bankruptcy and would not be... have the benefits of a stay, they would have that right. So either way, whether it was transferred or converted as a beneficiary of a trust of these amorphous equitable interests, if they were converted, the Delaware Fund, which, by the way, didn't seek to foreclose in 2009 when they had the judgment against top flight, they would have the right to recover these beneficial interests, not the debtor. Consequently, it was not a violation of the stay. You have two minutes. Oh, I have two minutes. Thank you, Your Honor. I'm sorry. The district court, or maybe it was the bankruptcy court, it's a long, long opinion, 100 pages long, but talks about the tax treatment with regard to... Yes. ...and that actually, that they couldn't own the property... Yes. ...because they wouldn't be in a position because of the... as a foreign investor, if they held an interest in the property itself, they wouldn't be... the income would be attributable to them. Correct. They set this up... It's at page 60, I think. They set this up so they would be offshore, they would either get the benefit of a tax, maybe they want to avoid American authorities, I don't know, and they delegated to the Delaware Fund all the responsibility to manage it. The Delaware Fund chose not to foreclose its lien. It decided in 2010 to enter into this transaction where they were going to monetize it. That's not a conversion, that's a transfer. He started, if you... this long-winded complaint, the initial complaint, is all about fraudulent transfers. And what happened here is they did a left turn and they said, we can cut this off vis-à-vis SFN, we can say it was a violation of the stay, and we don't have to go into the merits of whether this was a transfer or not. And that's what they did. Lastly, this is not a claim against the estate under colonial realty. You have an entity in the Cayman Islands. There is no way they were liable for these tax obligations on a property in Georgia. They were not in the chain of title. They were not recorded anywhere in the chain of title. Lastly, the entity in which the Stillwater Funds merged, the Jerova Asset-backed holdings, they merged. That entity had notice of this tax foreclosure. They were served. They didn't appear at the foreclosure in bid. My client was the only bidder, and I know they make a lot of issue as to these appraisals and what the value was, but if this property was worth so much, I think there would have been more than one bidder selling for $226,000. I see my time is up, Your Honors. I thank you. Thank you. Westerman Ball by Richard Harrison for the Appellee CLRP-Stonecrest. Good morning, Your Honor. May it please the Court. The decision below should be affirmed in all respects. In summary, the 2013 tax lien foreclosure of the Hillandale property did not implicate the bankruptcy stay at 11 U.S.C. 362A1 because the foreclosure proceeding was not an action against the debtor, Stillwater Offshore. Alternatively, the 2013 tax lien foreclosure proceeding did not implicate the bankruptcy stay at 11 U.S.C. 362A3 because it did not involve the property of the debtor, Stillwater Offshore. This Court has meticulously balanced the interest of creditors and debtors since 1992 when it handed down the bright line rule in colonial realty, which says quite simply and provides definitive guidance for bankruptcy practitioners and real property transactions that property wrongfully conveyed from a debtor pre-petition cannot become part of a debtor's estate unless and until it is recovered. This Court laid out succinct rationales for that, pointing to the United States Bankruptcy Code and the innumerable provisions under 541 for the recovery of properties by trustees who have now experienced proof that a debtor's property was fraudulently conveyed. Similarly, the Bankruptcy Court, this Court, and the prior courts who have all ruled on this decision, particularly N. Ray Saunders, which was the foundational ruling for colonial realty, all discussed the impact of a stay upon real estate transactions where you can have an appellant springing a stay years after a conveyance is made against the transferee who has paid good value in good faith and has had no prior opportunity to contest the transaction. I point to the underlying procedures in this case. This case was before Judge Wiles for nearly two years in the pleading stage. During that time, this appellant filed a complaint in which it uncategorically alleged it had transferred all of its legal interests, legal and beneficial interests. Judge Wiles began to meticulously unwind the 24 separate transactions involving the Stillwater Funds and determined in 2015 that the appellant was obligated to file a supplemental complaint. Judge Wiles detailed what was to be filed in that supplemental complaint. He wanted to see the exact interest being transferred. He wanted to see the transfer or transferees. He wanted to see the dates of the transfers because Judge Wiles was focused on the gravamen of the adversary complaint, the fraudulent conveyance claim under 544. In each of the three iterations of this appellant's complaint, it continued to allege that it had transferred all of its legal and beneficial interests. Thus, Judge Wiles ultimately ruled on the first amended complaint that colonial realty was directly applicable. The debtor Stillwater Offshore had acquired a participation interest in 2007 from its sister fund, Stillwater Onshore. That participation interest was nothing more than a beneficial interest, a pro rata share, in mortgage proceeds to the extent they were collected by the sister fund and placed in trust. In 2010, Stillwater Offshore conveyed its entire interest, its entire beneficial interest as part of this $300 million merger with the Jerova Holdings Company. The idea that this is somehow a conversion is a complete misnomer because what this court is being asked to do is impose a stay to interdict the transfer of real property arising out of a Georgia foreclosure action. Conversion actions do not apply to real property. Conversion actions are limited to personal property. Secondly, at the hub of every conversion action is that the owner has no notice that dominion and control is being exercised over its property. In this case, the Stillwater funds in their entirety knowingly participated as two sophisticated entities in the transfer and merger process. A conversion action is a complete hindsight attempt by this appellant to circumvent the failures in its own fraudulent conveyance pleading. As a result, there was no property in this debtor's estate at the time of the 2012 bankruptcy action and the imposition of the stay therein. I remind this Court of the very fundamentals that this Court has articulated from 1992 to this date, that a stay is limited by its purpose. A stay is limited to the recovery of assets dissipated from an estate for the protection of an estate's creditors. If assets are not in the estate, the stay has no purpose in being used. And this Court articulated that in one of its most recent pronouncements in Picard v. Fairfield Greenwich, where in 2014 this Court said, we will not impose stays against third parties where it is only factually possible that the action of the third party may adversely impact the estate's property. I cede my time. The decision below must be affirmed. Roberts. We'll hear the rebuttal. Thank you, Your Honors. Your Honor, at the very least, this was a fraudulent transfer. And under Picard and colonial realty, we then get to 362a1, because if the lien interest is part of the estate, potentially part of the estate, then an action which negates that lien is an action to recover a claim against the debtor. Picard supports reversal here. So, and that was something the Court never grappled with, that holding of colonial realty. But again, Your Honors, we have pleaded conversion as an alternative. If you look at Joint Appendix 1735, you will see from paragraph 4 on. We also have three counts in that complaint. Conversion, count 7. Conspiracy to convert into fraud, count 9. Aiding and abetting conversion, count 10. So it is not a later added theory. And the theory is borne out if you look at the facts. If you look at the Garner case, and we also cite Lipeter and Page, under New York law, if an agent is entrusted to do one thing, which is to get you 540 million in consideration through assumption of debt immediately, which never happens, and also gets you 385 million in preferred stock, which becomes convertible, and that never happens, and they instead do something very different, that that breach of fiduciary duty and exceeding of authority constitutes a conversion under New York law. So we do plead the facts of conversion. As I said, when an agent exceeds his authority, you have a similarity in factual predicates to both, fraudulent transfer and conversion. The question — but it doesn't matter for the automatic stay, because the automatic stay either applies under 362a3, or as in Colonial Realty, which found a violation, it applies under 362a1. And Your Honor talked about the offshore aspect. They couldn't own the property. They don't. They have a beneficial ownership interest. It's held in trust. Section 3.1 of the Participation Agreement, Appendix 267, states that the originator, which is the onshore fund, shall hold in trust for the participant an undivided participation percentage in the payments and the collateral. The collateral was the lien on the Hill and Dale property. That lien is transferred. And ultimately, Mr. Feinstein says, why didn't the onshore fund protect its — The tax code says you can't own the lien, so a beneficial interest has to be understood in the context of the tax code, doesn't it? Well, they have a benefit — Sure. A beneficial interest may not necessarily be a legal interest. A beneficial interest is not — Nobody understands a legal interest as in it's my property. Your Honor — You have a right to receive something, but that doesn't mean you own it. You have a beneficial ownership interest — You have a beneficial interest in receiving the proceeds of the mortgage. That's not what it says, Your Honor. Wait a second. That doesn't mean you own it. But that's not what it says, Your Honor. Participations are governed by — I don't want to answer my question. I'm sorry. Does a beneficial interest mean that you own it? It means you have a kind of ownership, yes. Kind of ownership. That's right. There's two forms of ownership. Navy ownership? No. There's two kinds of ownership. What ownership? No beneficial ownership. Who knows ownership? Is that what it is? No, Your Honor. Your Honor, there is both legal title — I understand. — and a trust. For example, if someone has millions of my dollars in trust as a trustee, they have the legal title to that, but I'm the beneficial owner. It exists for me. And that beneficial interest is recognized as an equitable interest under Section 541. It's property of the estate. Thank you, Your Honors. Thank you. We'll reserve this. We'll hear the next case, Document Technologies v. L Discovery. Thank you, Maria. May it please the Court, Elliot Stricker on behalf of DTI. The dispositive question on this appeal is whether DTI stated a plausible claim for misappropriation of trade secrets.